L. Kingsley Smith, J.
In this proceeding brought pursuant to article 78 of the CPLR., the petitioner seeks to compel the respondents to certify him for permanent status in the position of golf, course manager, competitive, grade 15 with the Town of Hempstead and to pay him wages for the period during which he claims to have been entitled to such permanent status.
The petitioner was originally employed as a recreation attendant (labor class) as of April 15, 1966. He served in that position until October 4, 1967 when he was provisionally appointed to the position of golf course manager with the title of golf course manager, provisional competitive, grade 15.
On January 17, 1970 the Nassau County Civil Service Commission conducted an examination for the position of golf course manager I, Nassau County towns. The petitioner and five other candidates took that examination. Only two of them who took the examination attained passing grades. The petitioner placed first with a grade of 90 and the other candidate had a grade of 79.5.
As a result of the examination, the Nassau Civil Service Commission on June 11, 1970 established an eligible list which contained only the names and grade of the two individuals who had passed the examination, i.e., the petitioner and the other candidate who received a passing grade.
Because the examination failed to produce a list containing the names of at least three candidates eligible for appointment as golf course manager, the Deputy Director of the Department of Parks and Recreation allegedly notified the petitioner on or about March 26,1971 “ that he was being relieved of his duties as golf course manager ” (emphasis supplied) and that he would revert to his former permanent status as recreation attendant effective as of April 5,1971.
The petitioner then took accumulated vacation time and sick leave from April 5, 1971 to about June 15, 1971. According to *479 the affidavit of the executive director of the Town of Hempstead Civil Service Commission, the petitioner thereafter “ refused and did not return to his permanent status classification of recreation attendant and then because of his unauthorized absence from his duties and activities ’ ’ his employment was terminated.
Notice of the purported termination of petitioner’s employment was mailed to him on September 10,1971. Such purported termination, allegedly effected pursuant to paragraph 4 of rule XXII of the Rules for the Civil Service of the Town of Hemp-stead, was effective as of August 27,1971. That rule and rule 37 of the Rules for the Classified Service (New York State; 4 NYCRR 5.3) both provide, in substance, that unauthorized and unexplained absence for a period of 10 work days shall be deemed to constitute a resignation.
The petitioner contends that by reason of the provisions of subdivision 4 of section 65 of the Civil Service Law (as amd. eff. May 21, 1969), upon his being found eligible for permanent appointment, his position as golf course manager should have become permanent notwithstanding the fact that the examination produced a list of only two eligible candidates. It appears from its letter to the petitioner dated January 29, 1971 that the Municipal Service Division of the New York State Department of Civil Service concurred in petitioner’s interpretation of the statute. That letter advised the petitioner that the appointing officer was faced with a decision of either making a permanent appointment or of terminating the provisional appointment. Purportedly the latter alternative was chosen.
The respondents contend that the petitioner did not become eligible for permanent appointment because the appointing authority did not have an eligible list containing three names of persons who passed the test. However, the court notes that the list, which the respondents characterize as not being a valid list, was established as an eligible list by the Nassau County Civil Service Commission on June 11, 1970 but that petitioner was not notified that he was relieved of his duties as golf course manager until March 26, 1971, more than nine months later.
It is the court’s opinion that by continuing the petitioner in his position as golf course manager during the intervening period, the respondents afforded him permanent appointment as contemplated by subdivision 4 of section 65 of the Civil Service Law. The purpose of the 1969 amendment to subdivision 4 of section 65 of the Civil Service Law (L. 1969, ch. 668) and the situation which made necessary the amendment are set forth *480 in the memorandum of the State Department of Civil Service in support of the amendment (2 McKinney’s 1969 Sess. Laws of N. Y., p. 2455). The memorandum noted that many instances had been encountered “where an examination for a position produces a small list having only one or two eligibles willing to accept appointment and where one of such eligibles is the person holding the position on a provisional basis, and the appointing officer refuses to give a permanent appointment to the provisional employee but elects to continue him on a provisional basis. In such a case the municipal service commission having jurisdiction has no choice but to arrange for another examination. Since the State Civil Service Department prepares and rates about 85% of all examinations for local positions outside the City of New York, the Department is almost always asked to prepare another examination. This process can go on and on until a list of at least three persons willing to accept appointment is produced, thus forcing the appointing officer to make a permanent appointment * * * Under this measure if a provisional passed an examination and was reachable for permanent appointment, the appointing officer would either have to give him a permanent appointment or appoint someone else on a permanent or provisional basis.”
In this case there is presented a situation of the type which the amendment of subdivision 4 of section 65 of the Civil Service Law was intended to prevent. The examination which petitioner took rand passed produced a list with only two eligibles. The appointing authority was faced with the decision of either making a permanent appointment (which it did not and has not done) or of terminating the petitioner’s provisional appointment within the time limits specified by subdivision 3 of section 65 (which it did not do). The effect of keeping the petitioner in the position of golf course manager for a period of more than nine months after his name appeared on an eligible list was to accord him permanent status in the position as prescribed by subdivision 4 of section 65 of the Civil Service Law.
The attempt by the Department of Parks and Recreation to terminate petitioner’s employment because of his alleged unauthorized absence from his “ position” as recreation attendant was wholly ineffective. The choice to continue the petitioner in the position of golf course manager for more than nine months after the establishment of the eligible list of June 11, 1970 had the operative effect of giving petitioner permanent status in that position and he did not revert to the status of recreation attendant. Consequently, he could not have been absent from a *481 position which he did not hold. Nor can it be said that petitioner was absent from the position of golf course manager because the Deputy Director had notified petitioner on or about March 26, 1971 that he was “being relieved of his duties as golf course manager ”. Having been so relieved, there were no duties from which petitioner could be considered to have absented himself.
Finally, it appears from the documents attached to respondent’s papers that the purported termination of petitioner’s employment on August 27, 1971 was with respect to the position of golf course manager and not that of recreation attendant. That purported termination was invalid and respondents will be directed by the judgment to be entered hereunder to certify petitioner in the position of golf course manager, permanent, competitive, grade 15 and to pay him all wages and benefits of which he has been deprived since April 5, 1971, less the amount, if any, which petitioner may have received as compensation for other employment during the period subsequent to April 5, 1971 and less any unemployment insurance benefits he may have received during such period. (Civil Service Law, § 77; cf. Cornell v. T. V. Development Corp., 17 N Y 2d 69, 74.)
For the purpose of determining the date of completion of the petitioner’s probationary term in his permanent position as golf course manager, the commencement date of such probationary term shall be deemed to have been the date upon which the allegedly invalid list was established, i.e., June 11, 1970.