## (January 21, 1982)

■ In the Matter of ANASTASIA MARTIN, as Administratrix of the Estate of CHRISTOS LEKKAS, Deceased, Respondent, v STATE OF NEW YORK et al., Appellants. — Appeal from a judgment of the Supreme Court at Special Term (Cobb, J.), entered May 15, 1981 in Albany County, which granted decedent's application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Office of Mental Retardation and Developmental Disabilities which discharged him from his employment. Decedent, a permanent civil service appointee to the position of Assistant Clinical Physician in the Office of Mental Retardation and Developmental Disabilities, was discharged on November 19, 1980 because "Only a person licensed or otherwise authorized under this article shall practice medicine or use the title 'physician'" (Education Law, § 6522). Decedent received a medical degree in 1968 from the National University of Athens, Greece, but it is conceded that he was never licensed to practice medicine in New York or in any State of the United States or in the Dominion of Canada. Decedent commenced this article 78 proceeding attacking the legality of the procedure which led to his dismissal, it being his contention that both the Federal and State Constitutions as well as subdivision 4 of section 50 of the Civil Service Law require that he be afforded a hearing or, alternatively, the opportunity to respond to the reasons for his discharge. Special Term, after narrowing the issue to whether a permanently appointed civil service employee in the competitive class may be summarily discharged upon the ground that at the time of his appointment he did not meet the qualifications for the position, cited this court's decision in *Matter of Ferrine v Bahou* (75 AD2d 669) as being dispositive of the issue and ordered decedent reinstated with back pay and benefits without prejudice to further proceedings deemed advisable by respondents. Respondents took this appeal.[1] Prior to its repeal in 1971 (L 1971, ch 987, § 1, eff Sept. 1, 1971), section 6512 (subd 1, par [b]) of the Education Law exempted full-time employees of a State hospital from the normal requirement of a State license to practice medicine. Inexcusably, however, the announcements for civil service examinations for some positions as physicians in State hospitals were not updated after 1971 to reflect the new requirement that appointees to these positions be licensed to practice medicine by the State of New York. As a result, decedent's permanent appointment resulted from his successful participation in a post-1971 exami-

1. Decedent died subsequent to the perfection of this appeal but prior to oral argument. By decision of this court dated January 13, 1982, the administratrix of decedent's estate was substituted as party petitioner. Since Special Term ordered decedent reinstated with back pay, the possibility exists that his estate could be the beneficiary of monetary benefits if it should ultimately prevail in this matter. We decline, therefore, to dismiss the appeal on the ground of mootness.

nation for the position of Assistant Clinical Physician. The announcement for this examination erroneously stated that a candidate must, in order to be appointed, be licensed by any State of the United States, the District of Columbia, or the Dominion of Canada. The announcement further stated that the duties of an Assistant Clinical Physician were to "provide medical services for physically ill patients of a State institution", in which capacity they would "give physical examinations, prescribe medications and treatment, assist in major operations, make ward rounds and supervise the acivities of medical and nursing assistants". Clearly, these enumerated duties fall within the definition of the practice of medicine (Education Law, § 6521) and only an appointee who was duly licensed by this State would be qualified to treat the sick and protect the State against claims that might arise if such patients were treated by unqualified professionals. Therefore, it necessarily follows that decedent was ineligible for appointment as an Assistant Clinical Physician since he was not licensed to practice medicine by New York State.[2] Where, as here, an ineligible applicant is appointed, the issue narrows to whether such an appointee can be discharged without being afforded an opportunity to challenge the reasons for his discharge. Resolution of this question turns on whether the qualifications are prescribed by regulation or statute. If by regulation and, accordingly, within the sole power and jurisdiction of the administrative agency, then no appointee who has obtained permanent status can be removed without being afforded the procedural rights set forth in section 50 of the Civil Service Law, despite the fact that had his infirmity to qualify for the position been timely known he would not have been appointed (*Matter of Wolff v Hodson*, 285 NY 197). If, however, the requirements to hold the position are mandated by statute, as respondents contend (Education Law, § 6522), it is beyond the power and jurisdiction of the Civil Service Commission or any other administrative body to confer upon an applicant eligibility for appointment denied to him by the Legislature (*Matter of Lockman v Van Voris*, 49 AD2d 285, citing *Matter of Wolff v Hodson, supra;* contra *Matter of Ferrine v Bahou*, 75 AD2d 669, *supra*). Since the duties of an Assistant Clinical Physician in the instant case were defined administratively, rather than by statute, such duties were amenable to administrative change. The record discloses that the Office of Mental Retardation and Developmental Disabilities became aware that decedent and others were performing medical duties requiring licensure, and, accordingly, circulated memoranda advising unlicensed physicians that they must desist from such practice. On October 15, 1979, the afore-mentioned memoranda were formalized into departmental guidelines that effectively prohibited decedent and others similarly situated from discharging any medical functions except under the supervision of a licensed physician. Presumably, that was the posture of decedent on the date his employment was terminated, viz., discharging limited medical duties under the supervision of a licensed doctor. Thus, respondents' contention that decedent was subject to job dismissal, without recourse to any benefits of his permanent employee status, on the sole ground that he was practicing medicine without a license (Education Law, § 6522) is without merit. As noted, the duties of an Assistant Clinical Physician were both defined and changed by administrative fiat. Therefore, at the time of decedent's discharge he was not practicing medicine without a license and, therefore, we must look to the Civil Service Law rather than the

2. Decedent's appointment was premised on his being licensed to practice medicine in Canada. However, it is conceded by all parties that decedent was never licensed to practice in Canada. He apparently passed one half of an examination for licensure in that country but failed the other half. Thus, even under the erroneous requirements which were announced for appointment as an Assistant Clinical Physician, decedent was not eligible.

Education Law to determine his rights. While it is clear that decedent would not have been eligible either to take the examination or be appointed if the announcements for civil service examinations for positions as physicians in State hospitals had reflected the 1971 statutory changes, it is equally clear that respondents could not terminate decedent on the ground of disqualification, in the absence of fraud, more than three years after the date of such appointment (Civil Service Law, § 50, subd 4). Special Term thus correctly annulled decedent's discharge and ordered respondents to reinstate him with back pay and benefits. Judgment affirmed, with costs. Mahoney, P. J., Sweeney, Kane and Weiss, JJ., concur; Casey, J., concurs in the result only.